UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER R. M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00950-SEB-MKK |
| | ) | |
| FRANK J. BISIGNANO,[1] Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

Plaintiff Jennifer R. M..[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Title XVI Supplemental Security Income ("SSI") under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Judge Sarah Evans Barker has referred the matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 11). For the reasons set forth below, the undersigned recommends that the Commissioner's decision denying Plaintiff

---

[1] Frank J. Bisignano became the Acting Commissioner of Social Security in May 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The undersigned has elected to implement that practice in this Report, in both the body and caption.

benefits be **REVERSED** and that the Court **REMAND** this matter for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed her application for benefits on April 19, 2021, alleging disability beginning September 19, 2019. (Dkt. 9-5 at 2–13, R. 174–85). Her claim was initially denied on November 29, 2021, then again upon reconsideration on April 26, 2022. (Dkt. 9-4 at 9–13, R. 86–90). Plaintiff requested a hearing, which occurred before ALJ Teresa Kroenecke on April 25, 2023. (Dkt. 9-2 at 19, 31, R. 18, 30). At the hearing, Plaintiff, who was represented by counsel, and Vocational Expert ("VE") Kathleen Reis testified. (*Id.* at 19, R. 18). In a written decision, the ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act, since April 9, 2021. (*Id.* at 20, R. 19). The Social Security Administration's ("SSA's") Appeals Council denied Plaintiff's request for review, finding Plaintiff had failed to provide a basis for changing the ALJ's decision. (*Id.* at 2, R. 1). Plaintiff then filed for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    LEGAL STANDARD

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant's

impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.* (citations omitted); *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than

---

[3] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to SSI benefits. Often, the parallel section pertaining to the other type of benefits—disability insurance benefits ("DIB")—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a). Because the statutory references for SSI and DIB claims are substantially similar, the undersigned may reference them interchangeably throughout this opinion.

step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citations omitted). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004) (citation omitted). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352 (citation omitted). If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* (citation omitted). The Commissioner must then establish that the claimant—considering her age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citation omitted). This review is

limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citation omitted). The standard demands "more than a scintilla" of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (citation omitted). Thus, the issue before the Court is not whether Plaintiff is disabled, "but rather, whether the ALJ's findings were supported by substantial evidence" and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (*citing Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (alteration in original) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)) ("Where substantial

evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision . . . and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues[.]" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citations omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusions[,]" *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citation omitted). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted); *Clifford*, 227 F.3d at 872 (citation omitted).

## III.  BACKGROUND

### A.  Factual Background

Plaintiff was 33 years old as of the alleged onset date. (Dkt. 9-3 at 3, R. 65). She has received her GED and completed cosmetology school. (Dkt. 9-6 at 4, R. 198). She has no past relevant work. (Dkt. 9-2 at 30, R. 29).

## B.    ALJ Decision

In determining whether Plaintiff qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). (Dkt. 9-2 at 20–31, R. 19–30). At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 9, 2021. (*Id.* at 21, R. 20).

At Step Two, the ALJ found the following severe impairment: history of motor vehicle accident with multiple fractures. (*Id.* at 21–22, R. 20–21). The ALJ found Plaintiff's remaining conditions constituted non-severe impairments. (*Id.* at 22, R. 21). The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 23–25, R. 22–24 (considering Listings 1.15, 1.16, 1.18, and 1.19)). The ALJ determined that Plaintiff's mental impairments of depression, anxiety, and PTSD did not alone or in combination cause more than a minimal limitation in her ability to perform basic mental work activities. (*Id.* at 22, R. 21). As to the "paragraph B" criteria, the ALJ determined that Plaintiff had a mild limitation in concentration, persisting, or maintaining pace. (*Id.* at 23, R. 22). The ALJ found no limitations in Plaintiff's abilities to: understand, remember, or apply information; interact with others; or, adapt or manage herself. (*Id.* at 22–23, R. 21–22).

At Step Three, but before Step Four, the ALJ found Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), with the following exceptions:

> she can frequently stoop, crouch, and climb ramps and stairs; she can never kneel, crawl, or climb ladders, ropes, or scaffolds; she can have

no exposure to vibrations, or hazards, such as unprotected heights, or dangerous machinery; she can occasionally reach overhead with her left upper extremity; she can frequently handle or engage in gross manipulation, fingering, or fine manipulation with her left upper extremity.

(Dkt. 9-2 at 25, R. 24). At Step Four, the ALJ found Plaintiff had no past relevant work. (*Id.* at 30, R. 29). At Step Five, the ALJ concluded that considering the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs that existed in significant numbers in the national economy. (*Id.*). As such, the ALJ determined Plaintiff was not disabled. (*Id.* at 31, R. 30).

## IV.    DISCUSSION

Plaintiff presents two issues, attacking the integrity of both the RFC and the subjective symptom analysis.[4] (Dkt. 12 at 4). The Commissioner responds that the ALJ's decision is supported by substantial evidence, the ALJ's analysis of Plaintiff's RFC provides an adequate logical bridge between the evidence and conclusion, and that the ALJ's subjective symptom analysis is not patently wrong. (Dkt. 13 at 6–18).

### A.    Examining Psychologist

In critiquing the RFC, Plaintiff alleges several errors in the ALJ's analysis of her psychological symptoms and their impact on her daily life. (Dkt. 12 at 11). First, Plaintiff argues that the ALJ erred when she disregarded the opinion of the examining psychologist, Dr. Smith, because it did not include a functional analysis.

---

[4] Plaintiff also states that the ALJ "erroneously conclude[ed] [Plaintiff's] mental impairments are non-severe and used an improper excuse to justify this finding." (Dkt. 12 at 4). However, Plaintiff failed to develop this argument further in her brief, and thus, the Court need not consider it. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted).

(*Id.* at 12–13 (citing *Colson v. Colvin*, 120 F. Supp. 3d 778 (N.D. Ill. Aug. 14, 2015); 20 C.F.R. § 416.927(d)(2); *Bates v. Colvin*, 736 F.3d 1093, 1102 n.4 (7th Cir. 2013))). The Commissioner does not respond to this specific argument, except to assert that "Plaintiff is mistaken that the ALJ disregarded Dr. Smith's mental examination findings." (Dkt. 13 at 9; *see also id.* at 1 ("Plaintiff failed to show any specific limits on mental work capacity from Dr. Smith or any other doctor that would support a challenge to the ALJ's findings")). Rather, the Commissioner maintains that substantial evidence supports the ALJ's decision, and that Plaintiff has failed to demonstrate that the ALJ's analysis was "patently wrong." (*Id.* at 1, 6).

Plaintiff further argues that the ALJ erred by discounting Dr. Smith's opinion due to its reliance on subjective allegations. (Dkt. 12 at 13). Plaintiff alleges that "[t]he ALJ fails to understand that there are no objective tests to diagnose mental impairments, and as such diagnoses are inherently made based on subjective allegations." (*Id.*). The Commissioner responds by taking issue with the latter half of Plaintiff's argument, asserting that "when assessing the severity and impact of her mental impairments, the state agency psychologists likewise cited normal mental status examination findings in support of their findings." (Dkt. 13 at 11–12 (citing Dkt. 9-3 at 6–7, 13, R. 68–69, 75)).

The Court agrees with Plaintiff that the ALJ failed to provide a logical reason for discounting Dr. Smith's opinion. In her discussion of Dr. Smith's consultative examination, the ALJ stated the following:

> Dr. Smith provided a [thorough], in-person examination of the claimant with detailed explanations as to his findings. **However, Dr.**

9

> **Smith failed to provide a functional analysis of the claimant which is the vital essence of an opinion statement and the lack of which greatly reduces any probative value. Moreover**, Dr. Smith's statements were **largely based on the subjective allegations and were not consistent with the medical evidence of record** including mental status examinations that found the claimant with normal behavior, with a normal mood, with a normal affect, with normal judgment, and as calm (Exhibits 1F, pgs. 11, 19; 3F, pg. 57; 4F, pg. 10; 10F, pg. 9; and 11F, pg. 13).

(Dkt. 9-2 at 29, R. 28 (emphasis added); *see id.* (seemingly discounting NP Davis's written statement, at least in part, for failing to "provide any functional analysis of the claimant's limitations"); *see also id.* at 28, R. 27 (finding Dr. Rice's opinion not persuasive due to "failure to provide a function-by-function assessment, which is the vital essence of a medical opinion, and offered no prognosis whatsoever.")).

The ALJ's first basis for "greatly" discounting Dr. Smith—his failure to provide a functional analysis of Plaintiff—is erroneous. A consulting physician is not required to provide such analysis; that work is left to the ALJ. *See Bates v. Colvin*, 736 F.3d at 1100 n.4 ("the extent of what a claimant can do despite her limitations is committed to the exclusive discretion of the ALJ") (citing 20 C.F.R. §§ 404.1545(a)(1), 404.1527(d)); *Angela O. v. Kijakazi*, No. 4:21cv52, 2022 WL 1468252, at *7 (N.D. Ind. May 10, 2022) ("An opinion regarding what a claimant can or cannot do in a given day is not a 'medical opinion' to which the ALJ must defer . . . Thus, a medical source need not provide a function-by-function analysis.") (citations omitted); *Colson*, 120 F. Supp. 3d at 792 ("But the question of what a claimant can do despite his limitations is exclusively within the ALJ's purview . . . Thus, an examining physician need not provide a function-by-function analysis.") (citations omitted). Therefore, a physician's failure to provide a function-by-function analysis

is not an appropriate basis for rejecting his or her opinion. *Id.* Here, however, the ALJ did just that, finding that the lack of functional analysis "greatly reduce[d] any probative value" of Dr. Smith's findings. (Dkt. 9-2 at 29, R. 28).

The ALJ's second basis for rejecting Dr. Smith's findings—that they were "largely based on subjective allegations"—is also circumspect. The Seventh Circuit has "cautioned" that physical and mental symptoms are not always "explained through diagnostics," and that for at least some mental conditions "there isn't 'objective medical evidence' that can support a diagnosis." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) (citations omitted). "Thus it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms." *Id.*; *see also Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) ("A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise."); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings."). But, again, that is what it appears the ALJ has done in this case (for not only Dr. Smith but also for Dr. Rice and NP Davis). And although the ALJ also explained that she found Dr. Smith's findings were "not consistent with the medical evidence of record," (Dkt. 9-2 at 29, R. 28), she failed to develop

that assertion. The ALJ's decision to greatly discount Dr. Smith's opinion on two impermissible grounds fatally undermine the overall analysis, and the undersigned concludes that the ALJ thus failed to establish the requisite evidentiary support for her ultimate findings.

### B.    CPP Limitation

Plaintiff next argues that the ALJ erred by failing to consider her mild limitation in concentration, persisting, or maintaining pace ("CPP limitation") and overall psychological symptoms when formulating the RFC and posing hypotheticals to the VE. (Dkt. 12 at 14–18). Plaintiff argues that the ALJ's failure to inform the VE of this mild limitation prevented the VE from understanding the full extent of Plaintiff's disability, and thus, the decision should be reversed and remanded. (*Id.*). In response, the Commissioner argues that Plaintiff cited no medical opinions that suggested a greater degree of work limits than the ALJ provided. (Dkt. 13 at 15; *see also id.* ("Plaintiff's suggestion that she had work limits due to her mental impairments is poorly developed and lacks support, and therefore she has waived this issue.")).

The Court agrees that the ALJ's failure to include Plaintiff's mild CPP limitation in the hypothetical questions to the VE or adequately explain her consideration of said limitation when formulating the RFC requires remand. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see also DeCamp v. Berryhill*, 916

F.3d 671, 675–76 (7th Cir. 2019) (finding that the ALJ erred by not including moderate and mild limitations to the VE in the hypotheticals). Here, the ALJ specifically found that Plaintiff had a mild CPP limitation. (Dkt. 9-2 at 23, R. 22). Additionally, the ALJ noted that Dr. Smith concluded that the Plaintiff "had problems with concentration." (*Id.* at 29, R. 28). And even though the ALJ ultimately discounted Dr. Smith's opinions, she did find the opinion of Dr. Horton persuasive. (*Id.*). Dr. Horton concluded that Plaintiff had a mild CPP limitation. (*Id.*; Dkt. 9-3 at 6, R. 68). However, the ALJ failed to address this limitation when formulating the RFC, and each of the limitations presented to the VE by the ALJ related exclusively to Plaintiff's physical limitations; the ALJ made no mention of the mild CPP limitation in the hypothetical questions she posed to the VE. (*See* Dkt. 9-2 at 25, 57–59, R. 24, 56–58). This omission constituted error. *See Julie J. v. Kijakazi*, No. 1:20-cv-01597-SEB-DLP, 2021 WL 4437587, at *2 (S.D. Ind. Sept. 28, 2021) ("The mere fact that Plaintiff may have received less extensive treatment for her mild mental impairments than her more significant physical issues does not explain why the ALJ found it unnecessary to include *any* mental limitations in his RFC assessment or hypothetical questions to the vocational expert despite having assessed Plaintiff as having mild limitations in all four areas of mental functioning.") (emphasis in original).

The Commissioner's argument that affirmance is appropriate since "no medical source opinions had suggested greater work limits than the ALJ found," (Dkt. 13 at 15), is not persuasive. As noted above, two separate physicians noted

some limitation related to concentration, and the ALJ herself concluded there was a mild CPP limitation. "The ALJ may well have decided after reviewing this evidence that no further limitations were warranted based on the record, but she was required to say so." *Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at *7 (S.D. Ind. Sept. 17, 2021) (citations omitted).

In sum, because the ALJ failed to provide a logical bridge between the evidence and her conclusions, the undersigned concludes that the RFC is not supported by substantial evidence, and recommends that this case be remanded for reconsideration.

### C.    Subjective Symptom Analysis

Plaintiff next argues that because the ALJ's subjective symptom analysis was erroneous, the ALJ's decision should be reversed and remanded. (Dkt. 12 at 19). Plaintiff lodges several specific complaints regarding this portion of the ALJ's decision. First, Plaintiff argues that the ALJ provided an inadequate explanation of why she concluded that Plaintiff's activities of daily living ("ADL") suggested a higher level of functioning (*i.e.*, an ability to perform a full-time job) and that the ALJ's conclusion was inconsistent with Plaintiff's allegations. (*Id.* at 20 (citing *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *Anna K. v. Saul*, 2020 WL 2324343 (N.D. Ill. May 11, 2020))). Secondly, Plaintiff argues that the ALJ failed to adequately explain how her ADL were inconsistent with her testimony regarding her disabling pain. (*Id.* at 20–21 (citing *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *12 (N.D. Ill. Oct. 19, 2020); *Villano*, 556 F.3d at 562; *Steven L. v. Saul*,

2021 WL 1531603 at *4 (N.D. Ill. Apr. 19. 2021); *Pearline P. v. Saul*, No. 17 C 8996, 2020 WL 370187, at *8 (N.D. Ill. Jan. 22, 2020); *Patricia P. v. Kijakazi*, 2022 WL 3357263 (N.D. Ill. Aug. 15, 2022))). Thirdly, Plaintiff argues the ALJ failed to consider the qualifications on her ability to conduct ADL (*e.g.*, her need for modifications and assistance). (Dkt. 12 at 21–22 (citing *Craft*, 539 F.3d at 680; *Sneed v. Berryhill*, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017); *Herrold v. Colvin*, No. 2:13-cv-360-JEM, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015); *King v. Berryhill*, No. 1:17-cv-191-TLS, 2018 WL 3031668 (N.D. Ind. June 18, 2018))). Finally, Plaintiff argues that the ALJ never considered Plaintiff's 10-pound weight restriction, and that such restriction is inconsistent with the ALJ's conclusion that Plaintiff is able to perform "light work." (Dkt. 12 at 22). Plaintiff argues that the ALJ's failure to mention this restriction or to explain why it was not included in the RFC evidences the ALJ's failure to assess Dr. Gupta's medical opinions and the consistency of Dr. Gupta's opinions with the overall record. (*Id.* at 22–23).

The Commissioner disagrees with Plaintiff's assertions and contends that the ALJ appropriately considered Plaintiff's ADL. (Dkt. 13 at 12). The Commissioner argues that the ALJ noted that Plaintiff's ADL were only one factor she considered when determining Plaintiff's work capability. (*Id.* (citing Dkt. 9-2 at 28, R. 27)). And even if Plaintiff is correct, the Commissioner argues, the ALJ provided minimally articulate reasons for rejecting evidence of disability, and therefore the ALJ's subjective symptom analysis is not patently wrong and should be upheld. (*Id.* at 7). The Commissioner argues that the ALJ did in fact consider statements made

regarding modifications and assistance for the daily activities, as well as Plaintiff's mother's statements regarding a ten-pound limitation, but the ALJ found that these statements were inconsistent with the objective medical evidence. (Dkt. 13 at 12–14 (citing Dkt. 9-2 at 27, 29, R. 26, 28; Dkt. 9-6 at 22–29, R. 216–23; Dkt. 9-8 at 406, 433, R. 1102, 1129; Dkt. 9-9 at 269, 318, 324, 346, R. 1403, 1452, 1458, 1480)).

"In evaluating a claimant's credibility, the ALJ must comply with SSR [Social Security Ruling] 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-02024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[5] First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3.

When evaluating a claimant's subjective statements about the intensity and persistence of her symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms. *Cole*, 831 F.3d at 412. An ALJ does not have to believe an applicant for benefits, of course, *Sarchet v.*

---

[5] SSR 16-3p became effective on March 28, 2016, 2017 WL 5180304, at *13 (S.S.A. Oct. 25, 2017), replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing her "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

*Chater,* 78 F.3d 305, 307 (7th Cir. 1996), but if she doesn't, she has to explain why and support her explanation with specific reasons "supported by the record," *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). Only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong,'" *Elder*, 529 F.3d at 413–14, and "disturb the ALJ's credibility finding," *Burmester*, 920 F.3d at 510 (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

At step two of the Rule 16-3p analysis, the regulation requires the ALJ to consider the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3).

When reviewing the agency decision, "[r]ather than nitpick the ALJ's opinion for inconsistence or contradictions," the Seventh Circuit has instructed to "give it a commonsensical reading." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). And "[w]hen assessing an ALJ's credibility determination," the Court "do[es] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [it] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413.

With these principles in mind, the Court now turns to the ALJ's subjective symptom analysis in this case. As an initial matter, Plaintiff is correct that her ability to conduct ADL does not necessarily translate to an ability to perform full-

time work. *Thomas*, 826 F.3d at 961. That being said, however, "an ALJ is permitted to consider whether a Plaintiff's activities of daily living indicate that she can do more than alleged." *Higgs v. Berryhill*, No. 3:17-cv-00125-RLY-MPB, 2018 WL 2470749, at *8 (S.D. Ind. May 15, 2018), *report and recommendation adopted*, No. 3:17-cv-00125-RLY-MPB, 2018 WL 2463206 (S.D. Ind. June 1, 2018). Here, the ALJ recited the following in terms of her consideration of Plaintiff's ADL:

> The claimant's activities of daily living also suggest a higher level of functioning than alleged by the claimant. Despite her alleged symptoms, the claimant provides her own personal care; she prepares meals; she does household chores such as dishes, laundry, and vacuuming; she can go out alone; she takes public transportation; she goes shopping; and she manages her own finances (Exhibit 3E, pgs. 2, 3, 4; and Hearing Transcript). These activities indicate a greater level of functioning than the claimant's subjective complaints of pain would suggest. I would note that this is only one factor I considered when determining her residual functional capacity.

(Dkt. 9-2 at 28, R. 27). Absent from the discussion is any reference to the modifications necessary for Plaintiff to complete those activities, a factor which the ALJ was obligated to consider. *See Angela S. v. Kijakazi*, No. 1:20-cv-01135-MJD-SEB, 2021 WL 3463416, at *5 (S.D. Ind. Aug. 6, 2021) (stating, "The ALJ's failure to acknowledge Claimant's qualifications, accommodations, and assistance that she receives in regard to her daily activities is troubling," and that "[t]he ALJ may not overstate Claimant's activities and leave out all of Claimant's qualifying statements.).

Plaintiff explained numerous modifications and qualifications on her abilities during her testimony. For example, Plaintiff explained that she has difficulty putting on certain types of clothes due to difficulty in raising her arms. (Dkt. 9-2 at

18

51, R. 50). She requires assistance from her brother in order to wash her laundry and take out the trash. (*Id.* at 53, R. 52). And her mother explained that Plaintiff needs multiple breaks when she cleans dishes, and that she only does a quick grocery shopping trip once every few weeks. (Dkt. 9-6 at 24–25, R. 218–19).

Although the ALJ referenced Plaintiff's ADL as being "restricted" when summarizing her testimony, (Dkt. 9-2 at 26, R. 25), it is unclear whether the ALJ gave such modifications due consideration when assessing Plaintiff's level of functioning against Plaintiff's subjective complaints of pain. As the Commissioner points out, however, Plaintiff's ADL was not the only basis on which the ALJ discounted Plaintiff's allegations. (Dkt. 13 at 12). And if inadequate consideration of Plaintiff's ADL was the sole flaw in the subjective symptom analysis, remand likely would not be warranted. *See Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are, . . . and here the ALJ cited other sound reasons for disbelieving" the claimant) (emphasis in original).

But other flaws do exist. The undersigned is persuaded by Plaintiff's argument that the ALJ failed to provide a fulsome explanation of why she declined to include a ten-pound weight restriction in the RFC. Plaintiff's mother explained that Plaintiff was limited to lifting ten pounds following her left carotid subclavian bypass surgery. (Dkt. 9-6 at 22, 27, R. 216, 221; Dkt. 9-9 at 316, 324, R. 1450, 1458). The ALJ rejected the mother's statements, stating the following:

> Consistent with the regulations, I have considered all the evidence in the claimant's record when evaluating the intensity and persistence of

her symptoms based on the medically determinable impairments that could reasonably be expected to produce those symptoms. In so doing, I have considered the personal observations of C[.]M[.], the claimant's mother, in terms of how consistent those observations are with the claimant's statements about her symptoms as well as with all the evidence in the file (Exhibit 4E). I find that Ms. M[.]'s statements are generally consistent with the statements of the claimant; however, they are not consistent with the medical evidence of record and, therefore, not consistent with the above residual functional capacity.

(Dkt. 9-2 at 29, R. 28). But the discussion ended there. The ALJ offered no explanation as to *how* the mother's statements were inconsistent with the medical evidence. At the hearing, the ALJ did not ask whether the ten-pound lifting restriction had been lifted, instead only asking Plaintiff about her ability to lift at a previous job (which was prior to her left carotid subclavian bypass surgery). (*Id.* at 45–46, R. 44–45). The Commissioner engages in a detailed analysis of the medical records which could arguably be said to support the ALJ's finding, but such argument constitutes a post-hoc explanation and thus will not be considered by the Court. *See Glenda M. D. v. Kijakazi*, No. 1:20-cv-03313-DLP-JPH, 2022 WL 3053547, at *8 (S.D. Ind. Aug. 2, 2022) ("The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible.") (citations omitted). In sum, the undersigned struggles to trace the logical bridge between the record and the ALJ's findings regarding the lack of need for a ten-pound lifting restriction.

The Commissioner argues that these errors are insufficient to overturn the ALJ's credibility determination as "patently wrong" because the ALJ considered a variety of valid factors in determining Plaintiff's credibility. (Dkt. 13 at 15–16). The Commissioner is correct that generally, an ALJ's finding with regards to her

subjective symptom analysis will be sustained despite isolated errors. *Heather B. v. O'Malley*, No. 4:22-cv-00152-KMB-TWP, 2024 WL 685561, at *9 (S.D. Ind. Feb. 20, 2024). But, as noted above, the ALJ's consideration of Plaintiff's ADL as well as the need for (or lack thereof) a ten-pound lifting restriction fell short of constructing the necessary logical bridge. Considering the combination of these errors and the potential significance of those errors to the ALJ's ultimate findings (*e.g.*, if found credible, a 10-pound lift restriction could preclude Plaintiff from light work, *see* 20 C.F.R. § 416.967(b)), the undersigned cannot conclude that the ALJ's opinion is free of legal error and supported by substantial evidence. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (finding the ALJ's credibility determination patently wrong because "the ALJ erroneously evaluated Ray's symptoms and daily activities, misinterpreted medical evidence, and failed to ask why he skipped some appointments"); *Charles B.*, 2020 WL 6134986, at *6 ("In light of the numerous errors committed by the ALJ in evaluating Charles's subjective claims, the Court finds that the ALJ's credibility finding is patently wrong."). Thus, the undersigned recommends that the ALJ's decision be reversed and remanded for further proceedings.

## V.    CONCLUSION

For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation must

be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

So RECOMMENDED.

Date: 06/03/2025

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via CM/ECF.